CLARK v. ANHEIER.

(Circuit Court of Appeals, Eighth Circuit. March 8, 1901.)

No. 1,448.

MORTGAGEE IN POSSESSION—APPLICATION OF CROPS.

Where G. sold land to S., to be paid for by application of half the crop each year till full payment of the price, and after S. had mortgaged it to C., and C. had gone into possession under the mortgage and put in a crop, G. was paid all the purchase price and gave a deed, he is not entitled to half the crop, though reserving such interest as S. had therein; S. being entitled only to have the value of the crop applied on his debt to C.

Appeal from the Circuit Court of the United States for the District of North Dakota.

The leading facts on which this case turns are as follows: On the 21st day of May, 1891, George P. Griffith and Elmer L. Signor entered into a con-

tract, by the terms of which Griffith agreed to sell to Signor a certain section of land in North Dakota for $7,040, to be paid in the time and manner following: The purchaser agreed to break 300 acres of the land prior to the 10th of July, 1891, and that he would "cultivate and raise yearly thereon and thereafter a crop of wheat," and that he would "deliver one-half of all the crop of wheat raised on said premises annually, commencing with the year 1892, and until the full sum of $7,040, with interest thereon at the rate of seven per cent. per annum from and after April 1, 1892, shall have been paid." It was further stipulated that the seller reserved "the right to have and hold a lien upon all the crop of grain to be grown and raised upon said land, and any and all portions thereof, during the life of this agreement, to secure the conditions contained herein, and to secure the prompt and faithful performance of all the stipulations and agreements and promises of the party of the second part." And it was further stipulated that the instrument should constitute a "mortgage to the said party of the first part, all of the crop and crops of grain, of whatsoever name or nature, to be grown, sown, raised, and harvested upon the said lands, and the whole thereof, during the years 1892, 1893, 1894, and 1895." Signor entered into the possession of the land under the contract, and continued to occupy and cultivate it until the 9th day of May, 1897, when he leased it for one year to G. Lee Clark, the appellant, who entered into the possession thereof under the lease, which by its express terms expired on the 9th day of April, 1898. This lease provided that the lessee should sow and plant the land to wheat, and pay for rent of the land during the season of 1897 one-half of the crop of wheat grown thereon, according to the terms of the contract between Griffith and Signor above mentioned. The rent of that year was paid, and is not here in controversy. On the 15th day of July, 1897, Griffith conveyed the land by quitclaim deed to Christopher H. Anheier, as receiver of the Citizens' National Bank of Fargo, N. D., the appellee, subject to the rights of Signor under his contract with Griffith; and by the same instrument Griffith assigned and transferred to the appellee all his rights under that contract. On the 9th day of April, 1898, Signor conveyed the land by quitclaim deed to G. Lee Clark, the appellant. It is claimed by Clark that this deed, though absolute in form, was in fact a mortgage to secure the payment of an indebtedness owing by Signor to Clark, and that his possession of the land for the year 1898 was as mortgagee under this deed, and not otherwise; and the controversy in this case is over one-half of a crop of flax raised on the land by Clark in 1898. On the 25th day of March, 1899, the appellee, for the consideration of $6,000, conveyed the land to Sophia A. Signor. The amended bill on which the case went to final hearing and comes before this court was filed by Christopher H. Anheier, as receiver of the Citizens' National Bank of Fargo, N. D., against G. Lee Clark on the 30th of June, 1899. It alleges, on information and belief, that the defendant, Clark, cropped the premises during the year 1898 by virtue of the contract entered into between him and Signor, whereby the land was leased by Signor to Clark for the year 1897. It also contains an averment to the effect that it was agreed between the complainant and defendant that a crop of flax was to be put in on the premises during the year 1898. The bill prays that it may be decreed that under the contract of lease between Signor and Clark the complainant has a lien upon the crop of flax raised upon the land by the defendant, Clark, in the year 1898, and prays a foreclosure of the same. The averments of the bill are denied by the answer. The circuit court entered a decree as prayed for in the bill, and the defendant appealed.

Seth Newman (R. M. Pollock, on the brief), for appellant.

V. R. Lovell, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts as above). Under the contract between Griffith and Signor for the sale and purchase of the land, Signor was to sow the land in wheat an

nually, and deliver one-half of the crop grown to Griffith, not as rent for the land, but in payment, at its market value, of the purchase money. In other words, under the contract payment for the land was to be made by applying to that purpose one-half of the yearly wheat crop grown on the land, until full payment had been made. Of course, it was open to Signor to pay the purchase price in money if Griffith or his assignee was willing to accept it; and whenever the purchase money and interest was paid, no matter by whom or in what manner, neither Griffith nor his assignee could thereafter assert any claim to or lien on the crops grown on the land. Three months before this bill was filed the complainant had sold and conveyed the land to Sophia A. Signor "for the sum of $6,000 in cash." Six thousand dollars was largely more than was then due on the purchase money under the Griffith and Signor contract, and, while there is some parol evidence to the effect that other considerations entered into this sale, there is nothing to that effect in the deed, which is absolute and without qualification or reservation. In the bill filed by the complainant on the 18th of April, 1899, against Elmer L. Signor and the appellee, seeking, in substance, the same relief sought in the present bill, the complainant gave this version of the transaction which resulted in the conveyance of the land by the complainant to Sophia A. Signor:

"And your orator further shows that on or about the 24th day of March, 1899, a settlement was effected between your orator and the defendant Elmer L. Signor and his mother, Sophia Signor, by the terms of which all matters in difference between your orator and said defendant and said defendant's mother were compromised, adjusted, and settled. And your orator further shows that the terms of the settlement between your orator and the defendant Elmer L. Signor and his mother were that your orator should convey by receiver's deed all his right, title, and interest in and to the hereinbefore described premises to the mother of the defendant Signor, and that said defendant Signor should pay your orator the sum of six thousand dollars, and assign to him all Signor's claim to one-half of the crop in controversy."

It will be observed that in that bill, which was sworn to, the complainant set up no claim to the crop in controversy under the Griffith and Signor contract or under the Signor and Clark lease for the year 1897, but set up and relied on an assignment to him of "all Signor's claims to one-half of the crop in controversy." If Signor had no just "claim to the one-half of the crop" as against the appellee, then his alleged assignment invested the complainant with no right. Passing further consideration of these facts for the present, and coming to the case made by the present bill, we find the complainant rests his claim to the one-half of the flax crop in dispute on two grounds: First, he alleges on information and belief that "said defendant Clark cropped said premises during the year 1898, by virtue of the written contract entered into by said defendant for the year 1897, and by so doing undertook, promised, and agreed to observe and keep the covenants of the contract hereinbefore set forth"; and, second, that "it was agreed between this complainant and the defendant that a crop of flax should be put in on said premises during the year 1898 in lieu of a crop of wheat, as provided in the contract hereinbefore set forth." The answer denies these allegations, and upon these

issues of fact the parol testimony is conflicting. The defendant testified in his own behalf that he did not cultivate the land in 1898 under the Signor lease of 1897, but that that lease expired on the 9th day of April, 1898, by its own limitation, and that he thereupon procured a quitclaim deed from Signor for the land, which was to be treated as a mortgage to secure the payment of a large sum of money which Signor owed him, and that he took and held possession of the land and cultivated it in 1898, and raised the crop in dispute, as a mortgagee in possession; and he denies with emphasis that he ever made any contract whatever with the complainant for the cultivation of the land that year, or as to the kind of crop he was to grow thereon. We forebear discussing the conflicting parol testimony on these issues. Conceding that it leaves them in some uncertainty, there are two rules applicable to the case which dispel all doubt: The first is that the burden of proof is on the complainant to satisfy the court of his right to recover; and the second is that where the parol testimony leaves the facts in doubt the court will look to the writings in the case, and give effect to them according to their legal import. Applying the latter rule, it is clear that the lease of the land from Signor to Clark for the year 1897 expired on the 9th day of April, 1898; and it is equally clear upon the face of the writings that Clark did not hold the possession and cultivate the land under that lease for the year 1898, but that he was entitled to possession of the land and the crops grown thereon for that year under his mortgage deed,—the fact being satisfactorily established that Signor was his debtor, and that there was a sufficient consideration for the execution of the deed. We are satisfied that if the complainant, when he conveyed the land to Mrs. Signor, made any kind of reservation or agreement concerning the crop of 1898, it did not extend beyond the interest, if any, that Signor might have therein; and it seems clear, both upon the weight of the parol testimony and on the face of the writings, that he had no interest whatever in the crop of that year, other than that to which every mortgagor is entitled as against his mortgagee in possession, namely, the right to have the rents and profits applied towards the extinguishment of the mortgage debt. It is quite evident that when the complainant settled with Signor, and received full payment for the land, and conveyed it to Signor's mother, he believed or suspected that the appellant, Clark, had cultivated the land in 1898 under a renewal of the lease of 1897; and as under that lease the rent reserved (being one-half of the crop) was to be paid to Griffith or his assignee, as provided in the contract between Griffith and Signor, the complainant conceived he was entitled to Signor's claim for the rent of that year, and stipulated for it accordingly. But there is an entire want of proof to show a renewal of the lease of 1897, and there is written and parol testimony to show that the appellant held and cultivated the land in 1898 under his mortgage deed, which entitled him to all the rents, issues, and profits of the land until his mortgage debt was extinguished. There is no satisfactory proof to show that the appellant ever assumed or became obligated to perform any of Signor's covenants in his contract with Griffith, beyond those contained in the lease of 1897, which were

limited to the crop of that year and to the life of that lease, and were fully discharged and satisfied. On this state of facts, the complainant has no right to or interest in the crop of 1898, as against the appellant. The decree of the circuit court is reversed, and the cause remanded, with instructions to enter a decree dismissing the bill for want of equity.